**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

AUG 20 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MICHAEL J. MURRAY, M.D. - a married man, | No. 17-16803 |
| Plaintiff-Appellant, | D.C. No. 2:14-cv-01314-SPL |
| v. | MEMORANDUM[*] |
| MAYO CLINIC, a Minnesota nonprofit corporation; et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted June 13, 2019
San Francisco, California

Before: GOULD and IKUTA, Circuit Judges, and PEARSON,[**] District Judge.

Plaintiff Michael Murray timely appeals from the district court's granting of

Defendants' motion for partial summary judgment, its instructions to the jury, and

its evidentiary rulings. We address Murray's challenge to the district court's jury

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

instruction regarding the applicable causation standard for his ADA discrimination claim in a concurrently-filed opinion.

1.      The district court properly applied the factors under *Leisek v. Brightwood Corp.*, 278 F.3d 895 (9th Cir. 2002), and correctly granted summary judgment on Murray's claim for wrongful discharge in violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4311(a), because no genuine issue of material fact exists regarding whether Murray's termination was motivated by antimilitary animus.  Viewed in the light most favorable to Murray, Defendants' intraoffice emails do not rise to the level of expressed hostility.  Nor is the three-month gap between Murray's return from medical leave and Defendants' investigation of his conduct in the operating room, in and of itself, sufficient to support an inference of discrimination based on temporal proximity.  Murray experienced no negative treatment from his employer during this period of time, and his placement on administrative leave occurred immediately after the incident in the operating room.  Moreover, neither Defendants' decision not to report Murray's conduct in the operating room to the Arizona Medical Board nor Drs. Krahn and Trentman's questions concerning Murray's anger outbursts and concentration issues are inconsistent with Defendants' decision to terminate Murray based on his conduct.  Finally, Murray

fails to explain how Dr. Krahn's involvement in Murray's medical case after she handed the matter off to Occupational Medicine is evidence of disparate treatment.

In the alternative, Defendants affirmatively established that they would have terminated Murray without regard to his military service, based on the incident in the operating room. By his own admission, Murray grabbed Dr. Chien by the shoulders, pushed him, and yelled at him not to touch the equipment. Murray then screamed at Dr. Chien to leave the room. Murray later admitted to Drs. Trentman and Krahn that his behavior was inappropriate. Murray, aware that Mayo Clinic Arizona had terminated a Certified Registered Nurse Anesthetist with no military affiliation for a similar reason, confessed to his psychiatrist shortly after the incident that he was worried he would be terminated. For the same reasons, the district court correctly granted summary judgment on Murray's claim for wrongful discharge in violation of USERRA, 38 U.S.C. § 4316(c), because there is no genuine issue of material fact that Defendants lacked cause to terminate Murray.

2. The district court properly granted summary judgment on Murray's FMLA and ADA claims against Mayo Clinic on the grounds that Mayo Clinic was not Murray's employer under the FMLA and Murray failed to exhaust his administrative remedies. Murray produced evidence suggesting only that Mayo Clinic Arizona is a subsidiary of Mayo Clinic. Evidence of a parent-subsidiary relationship is insufficient to impute liability to the parent corporation. *See United*

*States v. Bestfoods*, 524 U.S. 51, 69 (1998) (corporate personalities are distinct). Additionally, Murray made his EEOC charge against only one entity—"Mayo Clinic in Arizona." He did not exhaust his administrative remedies against Mayo Clinic.

3.     The district court did not abuse its discretion by instructing the jury on Mayo Clinic Arizona's "direct threat" affirmative defense. In its original Answer, Defendant pleaded that Murray's ADA claims were barred because "[a]ny requested accommodation would impose a direct threat to the health and safety of patients and co-workers." Later, Murray voluntarily dismissed with prejudice his failure to provide reasonable accommodation claim. After a hearing on the issue, the district court instructed the jury on the defense. Although Defendants' affirmative defense was imprecisely pleaded, the district court did not abuse its discretion by liberally construing Defendants' operative Answer.

4.     The district court did not err by refusing to adopt Murray's requested jury instruction to find causation for Murray's ADA discrimination claim if Murray's termination was "motivated in part by [Defendants'] concern over conduct that may result from a disability that they regarded him as having[.]" This standard was derived from *Gambini v. Total Renal Care, Inc.*, in which we held that "a jury must be instructed that it may find that the employee was terminated on the impermissible basis of her disability" when the employee establishes a causal link

between the termination and conduct arising from the disability. 486 F.3d 1087, 1093 (9th Cir. 2007). *Gambini*'s reasoning does not extend to regarded-as ADA claims. "[C]onduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 946 (9th Cir. 2015) (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001)). Furthermore, Murray, who alleged no disability and requested no accommodations, has not shown that his conduct resulted from a regarded-as disability.

5.      The district court did not err by refusing to adopt Murray's proposed jury instruction allowing the jury to impute "his supervisors' bias and discriminatory motive . . . to the ultimate decisionmakers, regardless of whether the ultimate decisionmakers actually regarded Dr. Murray as disabled or held any discriminatory bias of their own when they decided to terminate Dr. Murray." Subordinate bias liability does not apply to FMLA interference claims. "In interference claims, the employer's intent is irrelevant to a determination of liability." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Liability under a "cat's paw" theory, by contrast, is predicated on the imputation of a supervisor's bias onto an employer. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 414, 421 (2011) ("The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact

cause, an adverse employment decision.").  Moreover, the district court adequately instructed the jury on Murray's theory of subordinate bias liability with regard to his ADA discrimination claim.

6.     The district court did not abuse its discretion in excluding evidence of a witness's drug use and of Defendants' intraoffice emails.  The district court reasonably determined that the witness's drug use 21 months after the operating room incident was too remote in time to be relevant.  *See United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991).  Additionally, the excluded intraoffice emails are irrelevant to Murray's FMLA and ADA claims.  *See* Fed. R. Evid. 402.  Even assuming *arguendo* that the emails had relevance, any probative value is substantially outweighed by the danger of confusing the issue of Murray's dismissed USERRA claims with his FMLA and ADA claims.  *See* Fed. R. Evid. 403.

        **AFFIRMED.**